[Civ. No. 904. Third Appellate District.—February 15, 1912.]

In the Matter of the Estate of SIDNEY NEWELL, Deceased. THE ANGLO & LONDON PARIS NATIONAL BANK, a Corporation, and STOCKTON SAVINGS BANK, a Corporation, Respondents, v. SIDNEY W. NEWELL, as Executor of the Last Will and Testament of SIDNEY NEWELL, Deceased, Appellant.

Estates of Deceased Persons—Removal of Executor for Fraud upon Estate—False Claim Allowed for Private Debt.—An executor should be removed under the terms of section 1136 of the Code of Civil Procedure, "when he has committed or is about to commit a fraud upon the estate." The act of the executor in allowing a false claim against the estate, with full knowledge of how the claim had originated, and that he had himself created the same as a claim against the estate, for the purpose of reimbursing his sister in law for moneys which he himself had borrowed from her, constituted a fraud against the estate for which he was properly removed.

Id.—Fraudulent Use of Power of Attorney—Execution by Executor to Himself—Transfer to Private Debtor—Approval of Claim.—Where the executor fraudulently used a power of attorney given to him by decedent while he was lying ill and near death, which contains no power to execute a note, to execute his note to himself, and then transferred the same to his sister in law, so as to include a large amount of interest added to his debt to her, and then approved the same as a claim against the estate, the case is clearly one of fraud upon the estate.

Id.—Review upon Appeal—Discretion of Court in Removing Executor.—The superior court, as a court of probate, has the supervision of the estates of deceased persons, and is vested with power, in the exercise of that supervision, to remove an executor when, in its discretion, such step is necessary for the protection of the estate; and that power is not to be interfered with by the appellate court, if it does not appear that its discretion has been abused; and where its findings and the evidence supporting the same appear to justify its action, this court will not review the same upon appeal.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Harding & Monroe, for Appellant.

Lilienthal, McKinstry & Raymond, and Arthur L. Levinsky, for Respondents.

BURNETT, J.—The appeal is from an order and judgment of removal of the executor. Several charges of misconduct were specified in the petition. The one which the court made the basis for its order is embraced in the following findings:

"That prior to the year 1895, Sidney W. Newell was a member of the firm of Eaton, Newell & Buckley, and prior to the year 1895, the above-named firm borrowed from Miss A. M. Upstone, who at said time was, and ever since has been, and now is, a sister in law of Sidney W. Newell, the sum of $3,000, and upon the dissolution of the above-named firm, in the year 1894 or 1895, it was agreed that said Sidney W. Newell should pay the said Miss A. M. Upstone the aforesaid sum of $3,000.

"That said Sidney W. Newell, and his father, Sidney Newell, executed a note in favor of said Miss A. M. Upstone for said sum of $3,000, together with interest from date of

said note, and said note remained in the possession of Sidney W. Newell, who at said time was attending to and from said time continued to attend to and manage all the business of Miss A. M. Upstone, and he continued to attend to all the business of Miss A. M. Upstone since said time and up to the present.

"That said note was never paid, and the same became outlawed, and the said Miss A. M. Upstone never demanded payment of said note from Sidney Newell (now deceased), or from the said Sidney W. Newell, and the said Sidney W. Newell destroyed said note.

"That in the year 1886, Sidney Newell (now deceased) executed and delivered to Sidney W. Newell a certain power of attorney, which power of attorney is general in its form and substance. . . .

"That said power of attorney nowhere and in no place authorizes the indorsement of a promissory note.

"That said power of attorney remained in one of the boxes in the vault of Stockton Savings Bank, and it was never recorded.

"That on the thirty-first day of August, 1909, and for some time prior thereto, Sidney Newell, now deceased, was sick and ill, and he died on the twenty-fifth day of November, 1909.

"That on the thirty-first day of August, 1909, at and in the city and county of San Francisco, Sidney W. Newell made and executed his certain promissory note in writing, in favor of his father, Sidney Newell, for the sum and amount of $7,561. . . . And thereupon, the said Sidney W. Newell indorsed said note as follows: 'Pay to the order of Miss A. M. Upstone; Sidney Newell by S. W. Newell, his attorney in fact, for value received. Demand and notice of nonpayment are hereby waived this 31st day of August, 1909. Sidney Newell by S. W. Newell, his attorney in fact.'

"And on the same day the said Sidney W. Newell forwarded the said note to Miss A. M. Upstone, who at said time was temporarily in the county of Butte.

"That at the time of the execution of the aforesaid note, by the said Sidney W. Newell, in favor of his father, Sidney Newell, the said Sidney W. Newell was not indebted to his father, Sidney Newell, in any sum of money whatsoever.

"That the said Sidney W. Newell never informed his father that he had executed the aforesaid note in his favor, nor did he inform his father that he had indorsed said note to the said Miss A. M. Upstone, and he did not advise his father, Sidney Newell, of anything whatsoever, or at all, regarding the aforesaid note.

"That the said Miss A. M. Upstone had never demanded of the said Sidney W. Newell the execution of the aforesaid note, but he did the same voluntarily and without demand, and he arrived at the amount of said note by calculating the amount of interest on said outlawed note of $3,000 from the time the note was originally given in the year 1894 or 1895, and added to the principal sum of said note of $3,000 the sum of $4,561 as interest.

"That thereafter, the said Miss A. M. Upstone returned from Butte county in the state of California, and went to reside with, and ever since has resided with, the said Sidney W. Newell, at his home in Alameda county.

"That the said Sidney W. Newell never at any time prior to the execution by him of the aforesaid note in favor of his father, and his indorsement thereon by him as attorney in fact to the said Miss A. M. Upstone, and at no time thereafter, ever used the aforesaid power of attorney at all, or exercised any rights thereunder.

"That on the thirty-first day of August, 1909, the said Sidney Newell was sick and ill and was expected to die at any time, and the fact that he was liable to die at any time was at the said time known to his son, Sidney W. Newell.

"That Sidney Newell was not indebted to Miss A. M. Upstone and the said Sidney W. Newell, by executing his note to his father, Sidney Newell, when he was not indebted to his father, and then indorsing said note in his capacity as attorney in fact for his father, in favor of Miss A. M. Upstone, sought to charge the estate of his father, to wit, the estate of Sidney Newell, deceased, with the payment of said note, not for the payment of a debt owed by Sidney Newell, but for a debt owed only by Sidney W. Newell.

"That on the twenty-ninth day of November, 1910, Miss A. M. Upstone, using the aforesaid note as a basis therefor, presented a claim against the estate of Sidney Newell, deceased, for the sum of $8,218.17, . . . and the said Sidney W.

Newell, as the executor of the last will and testament of Sidney Newell, deceased, did, on the twenty-ninth day of November, 1910, allow the said claim of the said Miss A. M. Upstone for the full amount of $8,218.17, and the said claim was upon the same day presented to the judge of this court for allowance, and the judge of this court disallowed and rejected the said claim.'' That the transaction in reference to the said note was without the knowledge of the deceased, and that the amount of the said claim is greater than the value of the said estate.

The court concluded that the allowance of this claim, under the foregoing circumstances, by the executor was a fraud upon the estate and the order of removal followed. There is no doubt that the evidence supports the said findings, and the only question can be whether they warranted the judgment of the court in removing the executor. Among the grounds for such removal enumerated by the statute is ''fraud,'' as provided in section 1436 of the Code of Civil Procedure, that ''An executor should be removed when he has committed, or is about to commit, a fraud upon the estate.'' Of course, the rule for our guidance in reviewing the action of the court below is as stated in *Estate of Healy,* 137 Cal. 474, [70 Pac. 455] : ''The court by which an executor or administrator is appointed has a very large discretion in determining whether, upon the facts presented to it, the officer shall either be suspended or removed, and, unless it shall appear that such discretion has been abused, and especially where the evidence is such that different minds might reach different conclusions thereon, the action of the trial court will not be reviewed on appeal.''

It is undoubtedly true, also, as stated in *Estate of Bell,* 135 Cal. 196, [67 Pac. 123], that ''a probate court should not defeat the will of the testator by removing his chosen executor for light or trivial causes''; also, as declared further in said opinion: ''But on the other hand, to the probate court is given, in the first instance, the supervision and protection of estates of deceased persons, with power, in the exercise of that supervision, to remove an executor when, in its discretion, such step is necessary for the protection of the estate; and that power is not to be interfered with by the appellate court, unless there has been a clear abuse of that discretion.''

The findings that we have quoted and the evidence supporting them present an unusual situation involving such circumstances of suspicion and discredit as to render it impossible for us to say that the court below abused its discretion. The learned judge of the lower court in his opinion declared: "That the act of the executor in allowing the claim hereinbefore referred to, possessing at the same time full knowledge of how the claim had been created, and that he himself had created the claim for the purpose of reimbursing his sister in law for moneys which he himself had borrowed, constituted a fraud against the estate seems to the court unquestionable. The fact that the judge of this court, to whom said claim was presented for approval, did not approve the same does not in any manner lessen the character of the act of the executor. It is the duty of an executor not only to protect the estate from fraudulent claims but also, if he has knowledge of the questionable character of any claim, to advise the court thereof. An executor is an officer of the court, and the judge whose duty it is to approve claims must to a greater or less extent depend upon the executor of an estate for information as to the merits of the claims presented."

We have given attention to the argument of appellant, but, in view of what has been stated, supplemented by the consideration due the situation of the trial judge as to the manner and appearance of the witnesses and the personal element involved, which cannot be reproduced by the record, we think further comment is unnecessary, and that we would be entirely unwarranted in interfering with the order or judgment.

It is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.