[Civ. No. 2515. First Appellate District, Division One.—November 26, 1918.]

## THE RICHMOND WHARF AND DOCK COMPANY (a Corporation), Respondent, v. ANSON S. BLAKE, Appellant.

CONTRACT—DAMAGES—BULKHEADING AND FILLING TIDE-LANDS.—In this action by an assignee for damages for breach of a contract to bulkhead and fill in tide-lands, for which the contractor was to receive an undivided one-half interest in the land when the work was completed, the court erred in excluding evidence offered by defendant to show what would have been the value of the land if it had been filled and walled.

ID.—MEASURE OF DAMAGES.—The measure of damages upon such a breach of contract is the difference between the price at which the contractor agreed to do the work and the reasonable cost to the owner of the property of having this work completed.

TIDE-LANDS—CITY OF RICHMOND—DEED FROM COMMISSIONERS—VESTED RIGHTS.—The grantee of tide-lands adjoining the city of Richmond, by deed from the tide-land commissioners acquired rights of which he could not be divested by the subsequent act of June 11, 1913, conveying the land in question with others to the city of Richmond.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge. Reversed.

The facts are stated in the opinion of the court.

Chickering & Gregory for Appellant.

Reed, Nusbaumer & Bingaman for Respondent.

LENNON, P. J.—This is an appeal from a judgment for the plaintiff, who is the assignee of the rights of one A. S. Macdonald against the defendant herein.

In 1906 Macdonald was the owner of certain submerged land in the city of Richmond, which land is known as tide lot No. 16, and lies under the waters of the bay of San Francisco. The outer boundary line of said land runs about along the line of what is known as the bulkhead harbor line in the bay of San Francisco as established by the United States Government. The defendant was at that time the owner of the uplands lot lying back of Macdonald's land. Macdonald and the defendant entered into a contract under which the defendant was to do certain work, such as building a seawall around and filling in the land owned by Macdonald, and when such work was completed, Macdonald was to convey to the defendant an undivided one-half interest in said land. Five years' time was given to complete the work, and time was made of the essence of the contract. The defendant failed to complete the work; Macdonald assigned his rights to plaintiff, who sues for damages for breach of contract.

The chief point made by appellant is that the court erred in excluding evidence as to what would have been the value of the land if it had been filled and walled, because such value of one-half of the land was the consideration moving to defendant for the work to be done upon the land, and defendant should be credited with such amount when he is charged with the cost of doing the work which he contracted to do.

The measure of damages upon a breach of a contract like the one under consideration is the difference between the price at which the contractor agreed to do the work and the reasonable cost to the owner of the property of having such work completed.

Evidence was admitted showing the reasonable cost of doing the work as contracted for. The consideration to be paid defendant was one-half of the land after it was filled. He was to receive not unfilled land and be credited with the cost of filling the same, but he was to receive filled land and to receive

the benefit, if any, of having such filled land contiguous to other filled land, the property of the plaintiff. To every part of this consideration, or its money equivalent, he was entitled, having in theory performed his contract by paying the plaintiff in damages the amount necessary to perform it. We think evidence should have been admitted showing the value of this full consideration to be paid, so that such sum could be deducted from the cost of doing the work.

The method employed by the trial court in measuring the damages is not the same in theory, and may or may not be the same in practice. It may be that if evidence of the value of the filled land had been considered by the court, it might have found that the plaintiff was not damaged and was entitled merely to nominal damages. The contract specially provided that after the work on the land was completed, and not before, then the plaintiff should convey to the defendant a one-half interest in the filled and walled land. The plaintiff should have recovered the exact amount necessary to do the work contracted for, which is virtually a fulfillment of the contract by the defendant, and thereupon the defendant should receive what he was to receive for such fulfillment of the contract, or its equivalent in money value, in the way of a setoff. The contract provided that the defendant was to receive one-half of the land after it had been filled. Therefore, evidence as to the value of one-half of the land if filled was improperly excluded, and the judgment will have to be reversed on that ground.

The defendant in his answer, after denying the allegations of the complaint, set up as a separate defense that the plaintiff did not have title to the land involved in the contract and could not have performed his part of the contract by conveying to defendant an undivided one-half interest in fee, and that the contract was void as against public policy, as it was a contract to trespass upon lands held in trust by the state for all its citizens.

Defendant bases his argument upon the act of the legislature of June 11, 1913, [Stats. 1913, p. 605], which conveyed the land in question, among others, to the city of Richmond, and gave the city power to prosecute all actions for the recovery of possession of the same from private owners. This act recited that all tide-lands were held in trust by the state

for the benefit of its inhabitants for the purposes of navigation, commerce, and fishing, and that the state has not the general power of alienation of such lands, but may, when the interests of commerce, navigation, and fishing require it, convey to municipalities limited and defined areas of such lands, with the power to govern, control, improve, and develop the same in the interest of all the inhabitants of the state. The plaintiff held his title through mesne conveyances, by virtue of a deed from the tide-land commissioners.

Prior to the passage of the act of 1913, a patent by the tide-land commissioners, issued under the same legislative acts under which the patent here was issued, and by the same board of tide-land commissioners, was upheld in the case of *Knudsen* v. *Kearney,* 171 Cal. 250, [152 Pac. 541]. In that case the court discussed the matter fully, and pointed out that the acts under which the patent was issued provided that the boundaries of navigable waters should be fixed, and the waterfront line delineated, and, in effect, that the land not required for docks, piers, slips, or other purposes, should be subject to sale outright. Under this, and the other decisions referred to in this case, we think the title to this property was a vested right in the plaintiff, and could not be divested by this subsequent legislative act. But even conceding that such title could be divested, defendant would be in no better position in regard to his contention, for, as stated in the brief of respondent—if the contract had been fulfilled by the defendant, the work would have been completed in 1911, and the plaintiff would have been bound to convey the one-half interest in this land at that time. That was two years before the act relied upon by appellant was passed. The defendant would, therefore, have gotten his title free from any cloud created by this act, and if later a cloud was cast upon the title to his property, that would be his misfortune and would be a matter in which the plaintiff would have no concern, having conveyed the title free and clear of all encumbrances at the time the conveyance was due. We, therefore, think that the demurrer to the separate defense was properly sustained.

The judgment is reversed.

Beasly, J., *pro tem.,* and Sturtevant, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 26, 1918, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 23, 1919.

All the Justices concurred.